UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO


| | | |
|---|---|---|
| FRANK JAVIER CORDOBA, | ) | CASE NO.  4:09 CV3015 |
| | ) | |
| Petitioner, | ) | JUDGE KATHLEEN M.  O'MALLEY |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| J.T. SHARTLE, | ) | |
| | ) | |
| Respondent. | ) | |


Before the Court is pro se petitioner Frank Javier Cordoba's petition seeking habeas relief pursuant to 28 U.S.C. § 2241.  Mr. Cordoba, who is incarcerated at the Federal Correctional Institute in Elkton, Ohio ("F.C.I. Elkton"), names F.C.I. Elkton Warden J.T. Shartle as respondent.  Petitioner seeks an Order from this court transferring him from F.C.I. Elkton back to a lower security prison facility.  He maintains, in part, that he was wrongfully charged with violating a prison code while incarcerated at F.C.I. Jesup in Georgia.

*Background*

During a routine room inspection at F.C.I.  Jesup on May 19, 2008, a unit manager discovered an electronic device hidden inside a pillow case on Mr. Cordoba's bed.  When asked if the device belonged to him, petitioner answered, "Yes, it does."  (Pet.'s Ex. 9, F.C.I. Jesup Inc. Rpt.# 1734473, at ¶11.)  He was then asked to describe the device and replied "it is an iPod."  Id. The manager noted the device had recording capabilities and issued an incident report charging

petitioner with "Possession of a Hazardous Tool Hazardous to Institutional Security or Personal Safety," a Code 108 violation. A copy of the report was delivered to petitioner on May 19, 2008 at 7:55 pm.

During an interview regarding the incident, Mr. Cordoba's attitude was described as "good." He admitted possessing the iPod, but denied it belonged to him. Instead, he claimed "he got it from the Chaplain area to listen to music." (Ex. 11, Inc. Rpt. #1734473, at ¶ 24.) Because the code violation was considered high level, the matter was referred to a Disciplinary Hearing Officer (DHO). Petitioner was advised on May 22, 2008 of his rights before the DHO.

A DHO hearing was held on June 6, 2008. Mr. Cordoba asked Corrections Officer Godreau to be his staff representative. Officer Godreau testified he had known Petitioner since he was assigned to F.C.I. Jesup, always found him cooperative with staff, and that Petitioner never caused trouble. Mr. Cordoba testified that he found the iPod hidden in the Library, "and inmates knew about it, but staff did not previously know of it's [sic] existence." (Pet.'s Ex. #12, Inc. Rpt. ¶ III, B.) While he admitted using the iPod, he believed "since [he] . . . did not introduce it to the institution, [he was] . . . not responsible for it." Id.

The DHO considered the statement of Reporting Officer Santiago, the Memorandum from Officer Price (who was present with Officer Santiago when the iPod was discovered), and petitioner's statement, and ultimately determined that Mr. Cordoba committed the prohibited act. The DHO concluded that the fact that the device was hidden demonstrated petitioner's awareness that he was not authorized to possess the iPod. Once he hid the iPod for personal use, the DHO found it immaterial that he was not the original owner. The DHO also considered the fact that the device had recording capabilities and stated, in part: "This device

2

could also be utilized to record sensitive information not deemed appropriate for the inmate population, such as the belligerent encouragements of radical leaders, or other unauthorized communications." (Pet.'s Ex. #12, Inc. Rpt. ¶ V.) Petitioner was sanctioned with the loss of 27 Good Conduct Time (GCT) days, loss of visitations/telephone privileges for 6 months and a disciplinary transfer. A copy of the Report, indicating his right to appeal within 20 days, was provided to Mr. Cordoba on June 27, 2008 at 8:00 a.m.

Petitioner filed his appeal of the DHO's decision on a BP-230 Form, dated July 10, 2008. The Regional Administrative Remedy Appeal Office stamped "July 22, 2008" as the date on which the appeal was recieved. In a Notice dated August 13, 2008, the Office advised Petitioner that his appeal was rejected as untimely. The Notice stated: "regional appeals must be received within 20 days of the warden/CCM response or receipt of the DHO report. *This time includes mail time*." (Pet.'s Ex. 4)(emphasis added).

Mr. Cordoba protested the rejection, claiming he mailed his appeal on July 10, 2008, well within the 20 day deadline. He appealed the decision to the Central Office Administrator Remedy Coordinator, which affirmed the Regional Office's decision on January 1, 2009.

In his petition before this Court, Mr. Cordoba alleges he is being

> punished for something that the DHO conjectured up and that is not the way or intentions of the way that any hearing is to interpret the prohibited acts of the penal system, for if that was so, then any violation would be made to be whatever the hearing officer wanted them to be.

(Pet. at 6.) Furthermore, based on the date he signed his appeal, petitioner maintains he timely appealed the DHO's decision but has been denied his right to that appeal. He seeks an order from

this Court finding his appeal timely and allowing him to fully exhaust his administrative remedies. Once he has the opportunity to fully exhaust his remedies, petitioner believes the decision of the DHO will be overturned.

*Exhaustion*

Federal prisoners are required to exhaust administrative remedies before filing a petition under 28 U.S.C. § 2241. Little v. Hopkins, 638 F.2d 953, 954 (6th Cir.1981). If a prisoner is unable to obtain an administrative remedy because of his failure to appeal in a timely manner, then the petitioner has procedurally defaulted his habeas corpus claim. See Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 760 (3rd Cir.1996); Nigro v. Sullivan, 40 F.3d 990, 997 (9th Cir.1994); Sanchez v. Miller, 792 F.2d 694, 697 (7th Cir.1986); Engle v. United States, No. 00-6659, 2001 WL 1356205, at *2 (6th Cir. Oct. 25, 2001). In such cases, the petitioner must show cause and prejudice for the failure in order to bring the claim in court. Engle, at 2.

Generally, cause may be established by official interference with a prisoner's ability to complete the administrative process. Id. "[A]n administrative remedy may be inadequate where the administrative body is shown to be biased or has otherwise predetermined the issue before it." McCarthy v. Madigan, 503 U.S. 140 (1992), overruled by statute as stated in Lavista v. Beeler, 195 F.3d 254, 257 (6th Cir.1999). Unlike policy decisions or the interpretation of a statute, the issue over which petitioner is seeking review has not been predetermined. Therefore, he cannot argue futility based on a predetermination. The issue here is driven by petitioner's assumption that his administrative appeal was timely "filed" on July 10, 2008.

Mr. Cordoba asserts that this Court should find that the date on which he signed his appeal was the date he "filed" his administrative appeal, making that appeal timely. The

4

governing regulation provides:

> (a) Submission. The <u>deadline</u> for completion of informal resolution and <u>submission</u> of a formal written Administrative Remedy Request, on the appropriate form (BP-9), is 20 calendar days following the date on which the basis for the Request occurred.
> (b) Extension. Where the inmate demonstrates a valid reason for delay, an extension in filing time may be allowed. In general, valid reason for delay means a situation which prevented the inmate from submitting the request within the established time frame. Valid reasons for delay include the following: an extended period in-transit during which the inmate was separated from documents needed to prepare the Request or Appeal; an extended period of time during which the inmate was physically incapable of preparing a Request or Appeal; an unusually long period taken for informal resolution attempts; indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions requested under § 542.19 of this part was delayed.
>           *     *     *
> (d)Exceptions to initial filing at institution–
>           *     *     *
> (2) DHO appeals. DHO appeals shall be submitted initially to the Regional Director for the region where the inmate is currently located.

28 C.F.R. § 542.14(emphasis added).  Thus, the regulation provides that the appeal must be "submitted" within 20 days after the determination from which the appeal is taken.  The Court must determine, accordingly, when a BP-9 form is adequately submitted so as to trigger the appeal process.

### *Mail Box Rule*

A <u>pro se</u> habeas petitioner "files" a notice of appeal upon delivery of it to prison officials for forwarding by mail to the clerk of courts.  <u>Houston v. Lack</u>, 487 U.S. 266, 270 (1988) The Supreme Court established this 'mail box' rule based, in part, on the rationale that "a <u>pro se</u> prisoner's control over the processing of his notice necessarily ceases as soon as he hands it over

to the only public officials to whom he has access -the prison authorities- and the only information he will likely have is the date he delivered the notice to those authorities and the date ultimately stamped upon it." Id.

In Nigro v. Sullivan, supra, the United States Court of Appeals for the Ninth Circuit refused to apply the mail box rule to a 1993 version of 28 C.F.R. § 542.14.[1]  Although the Ninth Circuit previously had "applied the Houston rationale to hold that pro se prisoners successfully 'mail' or 'serve' papers under Fed.R.Civ.P. 5(b), 33, and 34 merely by depositing them with prison authorities for mailing," Nigro, 40 F3d. at 994 (citing Faile v. Upjohn Co., 988 F.2d 985, 988 n. 4, 988-89 (9th Cir.1993)), the Nigro court explained:

> These terms, left undefined, are susceptible to the construction given them in Houston and Faile. In this case, the operative term 'file' is defined, however. An appeal is 'considered filed when the receipt is issued.' 28 C.F.R. § 542.14 (1993). 'Issuance of a receipt' does not and cannot mean 'deposited with prison authorities.'  'File' in this case is simply not open to the interpretation given it in Houston or given 'serve' in Faile.

Nigro, 40 F.3d at 994.  The Supreme Court thereafter similarly declined to apply Houston in a case where the applicable statute specifically defined the "file" date as the date on which the request was received. Fex v. Michigan, 507 U.S. 43, 45 (1993).

After Nigro, section 542.14 was revised to remove the provision defining 'filing.' The First and Third Circuits have noted this distinction and declined to apply Nigro inasmuch as they were, as did the Court in Houston, now addressing a regulation with an undefined term. Casanova v. Dubois, 304 F.3d 75, 79 (1st Cir.2002); Longenette v. Krusing, 322 F.3d 758, 762-64

---

[1]     Part 542 was revised in January 1996 (61 Fed. Reg. 81 (January 2, 1996)).

(3d Cir.2003). Thus, the reasoning in these decisions does not conflict with either <u>Nigro</u> or <u>Fex</u> because the date of filing is *not* specifically defined.

Currently, there is no BOP regulation that: (1) requires an appeal be "received" within 20 days of an adverse decision by the warden; (2) defines the term "submit," as used in § 542.15(a), as meaning that the appeal must be "received" by the Regional Office; or (3) mandates that the 20-day-time limitation includes mail time. Nor does the plain language of § 542 disclose any such requirement. Therefore, it is appropriate to apply the prison mailbox rule to administrative appeals filed by <u>pro se</u> inmates under 28 C.F.R. § 542.15.

Mr. Cordoba avers that he mailed his appeal to the Regional on July 10, 2008. Exhibit #16 of his petition reveals a Case Manager's note stating, "Inmate Frank Cordoba transferred from F.C.I. Jesup, Georgia on 7-11-2008." (Pet.'s Ex. 16.) Thus, it is clear that Petitioner surrendered his appeal to F.C.I. Jesup authorities within the 20 days required by the regulation. The following day, he was transferred from F.C.I. Jesup. This Court finds the submission was timely under the provisions of the mail box rule, but that the BOP failed to process it. Under such circumstances, Petitioner's claim is not procedurally defaulted. The Court, accordingly, examines the substance of that claim.

*28 U.S.C. § 2241*
*Relief for Loss of Good Times Credits*

Mr. Cordoba asks this Court for a hearing to allow him to present facts "to support his innocence in this matter." (Pet. at 2.) He argues "that the violation that the petitioner is accused [sic] of did not hardly rise to the level of a sanction that was severe as placed on him." (Pet. at 6.) Petitioner believes he is "being punished for something that the DHO conjectured up

7

and that is not the way or intentions of the way that any hearing officer is to interpret the prohibited acts of the penal system." (Pet. at 6.) In closing, he asserts it would be a "manifest injustice" if he were not entitled to seek the relief provided by 28 U.S.C. §2241.

Because petitioner was sanctioned with the loss of good conduct time (GCT), he is entitled to some due process protection. <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974) ("there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution"). That protection includes: written notice of the charges at least 24 hours before a hearing to enable the inmate to prepare a defense; to call witnesses and present documentary evidence if doing so is not an undue hazard to institutional safety, and a written explanation of the evidence relied on and reasons for disciplinary action. <u>Id</u>. A disciplinary decision will satisfy the requirements of procedural due process when there is "some evidence" to support the disciplinary decision by the fact finder. <u>Superintendent, Mass. Corr. Institution v. Hill</u>, 472 U.S. 445 (1985).

Petitioner concedes he was provided notice, a hearing and a written explanation of the disciplinary action taken against him. He suggests, however, that he also has a due process right to an appeal that the respondent violated when his appeal was denied as untimely. Several courts, including the Sixth Circuit, have characterized administrative appeals as remedial and held that they are not an element of the due process rights afforded inmates.[2] <u>See</u> <u>Boles v. Weist</u>, No. 87-1862, 1988 WL 58866 (6th Cir. June 10, 1988)("Plaintiff does not have an inherent

---

[2]Although citation to unpublished Sixth Circuit precedents is disfavored, these cases are referred to in the absence of clear published case law from this Circuit "because it establishes the law governing the present action and 'there is no published opinion that would serve as well.' " <u>Norton v. Parke</u>, 892 F.2d 476, 479 n. 7 (6th Cir.1989).

8

constitutional right to appeal his disciplinary conviction"); <u>Chance v. Compton</u>, 873 F.Supp. 82, 86 (W.D. Tenn. 1994)(right to appeal disciplinary convictions is not within the narrow set of due process rights enunciated by <u>Wolff</u>); <u>Harrison v. Seay</u>, 856 F.Supp. 1275, 1281 (W.D. Tenn.1994); <u>see also Lowe v. Sockey</u>, No. 00-7109, 2002 WL 491731 (10th Cir. Apr. 2, 2002)(state prisoner's allegations prison officials lost his appeal of prison discipline hearing failed to state a due process violation claim since Fourteenth Amendment does not provide due process right to such an appeal); <u>Ainsworth v. Terhune</u>, No. C 02-2940 MMC, 2002 WL 1837806 (N.D. Cal. Aug. 8, 2002) (there is no constitutional right to a prison administrative appeal or grievance system); <u>Platt v. Brockenborough</u>, 476 F. Supp. 2d 467 (E.D. Pa. 2007) (holding that prisoners have no constitutional right to appeal the decision of a disciplinary hearing); <u>Brown v. Angelone</u>, 938 F.Supp. 340, 345 (W.D.Va. 1996); <u>Bell v. Lane</u>, 657 F.Supp. 815, 817 (N.D. Ill. 1987); <u>Grandison v. Cuyler</u>, 600 F.Supp. 967, 975 (E.D.Pa. 1984), <u>rev'd on other grounds</u>, 774 F.2d 598 (3d Cir. 1985); <u>but see</u> Harper v. Lee, 938 F.2d 104, 105 (8th Cir.1991) (administrative appeals process is part of due process protection afforded prisoners); <u>Hornsby v. Miller</u>, 725 F.2d 1132, 1134 (7th Cir. 1984)("assuming *arguendo* respondents failed to adhere to the regulations concerning appeals and that this failure constituted a denial of due process," petitioner received all relief to which he is entitled).  There is, moreover, some support in <u>Wolff</u> itself for the position that no due process right attaches to an administrative appeals process.  There, Supreme Court found that, while Nebraska did not appear to provide for administrative review of disciplinary decisions, that absence was not a fatal flaw to the due process protection afforded inmates in that state.  Thus, this Court finds that petitioner has no due process right to an administrative appeal.

Thus, while a federal constitutional violation in a prison misconduct proceeding

that results in the loss of good time credit may be remedied through a writ of habeas corpus, petitioner must establish that he was denied some process to which he was due before he is entitled to habeas relief. See Preiser v. Rodriguez, 411 U.S. 475, 500 (1973).  In this case, Mr. Cordoba received all of the due process safeguards outlined in Wolff.  He does not challenge whether he violated a prison code, but whether the punishment he received  was warranted. While the punishment seems unduly harsh and the failure to allow him to pursue a timely appeal unjustifiable, this Court has no authority to order the BOP to revisit the issue. A federal court's review of the quantum of evidence supporting a prison disciplinary board's decision is limited to determining whether some evidence supports the decision.  Id. The court is not permitted to re-weigh the evidence presented to the board. Id.  The quantity of evidence to support a disciplinary conviction is minimal and does not involve the independent assessment of witness credibility or weighing of evidence by the federal courts. Id. Consequently, a prison disciplinary decision should be upheld if "some evidence" in the record supports the decision. Id. at 455-56.

In this case, there is no dispute petitioner had the iPod in his possession or that the iPod had recording capabilities.  Therefore, "some evidence" supports a finding that he violated a prison code.  While Mr.  Cordoba takes issue with the fact that he was charged with violating Code 108,[3] his conduct is legitimately characterized as a Greatest Severity Prohibited Act.  See 28 C.F.R. § 541.13.  Any violation coded "Greatest Severity" mandates the DHO

---

[3]The violation is described as: "Possession, manufacture, or introduction of a hazardous tool (Tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade)." 28 C.F.R. § 541.13 (Table I).  For all Greatest Severity violations: "The Discipline Hearing Officer (DHO) shall impose and execute one or more of sanctions A through E." Id. (emphasis added).

10

impose at least one or more of sanctions A through E.  These include the following sanctions imposed (at a lesser degree in some cases) on petitioner:

> (B.1) Disallow ordinarily between 50 and 75% (27-41 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended); (C) Disciplinary Transfer (recommend); (D) Disciplinary segregation (up to 60 days); and, (G) Loss of privileges (Note--can be in addition to A through E--cannot be the only sanction executed)

Id. Thus, there is no basis upon which this court can set aside the DHO's sanctions when petitioner admittedly committed an act considered Greatest Severity under the BOP code. Regardless of the reason for his possession of the iPod, Mr. Cordoba received all the process to which he was due even in the absence of an appeal; and, there is 'some evidence' to support the decision to find petitioner guilty of Offense Code 108.

*Conclusion*

Based on the foregoing, the petition is dismissed pursuant to 28 U.S.C. § 2243. The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this decision could not be taken in good faith.[4]

IT IS SO ORDERED.

s/ Kathleen M. O'Malley
KATHLEEN M. O'MALLEY
UNITED STATES DISTRICT JUDGE

DATED:  June 23, 2010

---

[4]28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.

11